UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JESSE JONES,

    Plaintiff,

v.                                                         Case No. 2:07-CV-199
                                                       HON. R. ALLAN EDGAR

ROBERT JOHNSON et.al.,

    Defendants.
_____/

## **MEMORANDUM**

This case came before the Court for a bench trial on December 10, 2009. This memorandum sets forth the Court's findings of fact and conclusions of law.

I

Plaintiff Jesse Jones ("Jones"), a Michigan state prisoner in the custody of the Michigan Department of Corrections (MDOC), brings this action under 42 U.S.C. § 1983. Jones claims that the defendants deprived him of his federal constitutional right of access to the courts while he was incarcerated at MDOC's Alger Maximum Correctional Facility in Munising, Michigan.

Defendants Robert Johnson ("Johnson"), Dale Kurth ("Kurth"), Mary Bonevelle ("Bonevelle"), and Linda Maki ("Maki") were employed by MDOC at the Alger Maximum Correctional Facility. Johnson was an Assistant Resident Unit Supervisor, Kurth was a Residential Unit Officer, Bonevelle was a Hearings Investigator, and Maki was an Administrative Hearings Officer. Plaintiff Jones sues each of the defendants in their individual and official capacities. Jones demands injunctive relief, and compensatory and punitive damages.

Because plaintiff Jones has not met his burden of showing that he has suffered an actual

1

litigation related injury or legal prejudice to a non-frivolous claim, his claims against the defendants must be dismissed with prejudice.

II

MDOC has several policy directives and regulations governing what personal property and legal materials inmates may have in their cells. The stated purpose of these regulations is "to reduce potential loss of life, personal injury and property damage resulting from fires, explosions and related emergency incidents" in MDOC facilities. MDOC Policy Directive 04.03.120. MDOC Policy Directive 04.03.120(O) provides that, with certain exceptions not applicable in the instant case, "all books, clothing, and other combustible personal property [of prisoners] allowed in sleeping rooms, cells and dormitories shall be stored in Department-approved lockers or fire-resistant containers when not in use."

MDOC Policy Directive 04.07.112 also deals with the subject of prisoner personal property. The general policy statement at the beginning of Policy Directive 04.07.112 provides in part: "All property shall be properly handled to guard against fire, safety and sanitation hazards and minimize the risk of property loss or damage." Policy Directive 04.07.112(C) provides in part: "Excessive prisoner property in housing units constitutes a fire hazard and creates sanitation, housekeeping and security concerns."

Prisoners in the custody of MDOC are restricted to the amount of personal property they can maintain in their prison cells depending on their classification level. Jones was classified by MDOC as a Level V prisoner. MDOC Policy Directive 4.07.112(C) provides that a Level V prisoner shall not have personal property exceeding that which can be contained in one MDOC-issued duffel bag or similarly sized container. "These limits apply to all of the prisoner's personal property, whether

2

in his/her cell or stored elsewhere in the facility, except typewriters, excess allowable legal property and medically necessary items authorized to be possessed by the prisoner...."

One exception is that Jones was permitted to possess legal materials in excess of this amount if, after an administrative hearing, it was determined that the "excess" personal property was indeed necessary legal materials. MDOC Policy Directives 04.07.112(C) and 04.07.112(N); MDOC Operating Procedure 04.07.112. At any time prisoner Jones could be ordered by MDOC officials to pack up his personal property using a duffel bag, footlocker or similarly sized container pending an administrative hearing to determine if he was in compliance with the MDOC's property possession limits. MDOC Policy Directive 04.07.112(FF).

On June 14, 2007, Kurth gave Jones a "pack up" order because Kurth had observed a considerable amount of excess books and papers stacked up in Jones' cell. Kurth suggested to Jones that Jones obtain a footlocker to store the excess property. Jones rejected this suggestion, and he refused or disobeyed Kurth's order to "pack up." Kurth issued a major misconduct ticket to Jones for this "pack up" refusal. Kurth then confiscated and removed the excess property from Jones' cell and placed it in a duffel bag in a storage room.

Jones says that he refused to "pack up" because he wanted an administrative hearing to determine whether he could retain the confiscated books and papers as allowable legal materials. In the normal course such an administrative hearing would have been held. However, when Kurth learned the next day that it would take several months for such a hearing to take place, Kurth promptly returned the confiscated books and papers to Jones.

Shortly thereafter, Jones was again given the opportunity to acquire a footlocker to store his alleged legal material pending a "legal property" hearing. Jones had sufficient funds in his MDOC

prisoner account to purchase the necessary footlocker to properly store his excess books and papers. In the alternative, Jones could have obtained a footlocker on loan from the MDOC at no charge. Proving the old adage that no good deed goes unpunished, Jones rejected the opportunity to obtain a footlocker, doubtless looking ahead to filing this spurious 42 U.S.C. § 1983 lawsuit against Kurth and the other defendants. If Jones had accepted the footlocker, he would have been able to retain his personal property in his cell, including any legal papers, if indeed they were legal papers.

Faced with Jones' intransigence, Kurth then confiscated Jones' excess property a second time and put it in a duffel bag where it remains today somewhere within the MDOC. In October 2007, MDOC scheduled an administrative hearing before defendant Maki to determine whether the confiscated property should be returned to Jones as allowable excess legal material. Jones refused to attend this administrative hearing. Instead, when defendant Bonevelle, a hearing investigator, came to advise Jones of the hearing, Jones laughed at Bonevelle.

Jones claims that his confiscated property consists of papers relating to three MDOC major misconduct violations that he received.[1] As Jones describes them, these three major misconducts were for: (1) masturbating in front of prison personnel; (2) cursing a MDOC physician; and (3) refusing to allow MDOC officers to inspect his feet before being taken to medical care. Jones' plan, he says, was to obtain judicial review of the three major misconduct violations in a Michigan state circuit court pursuant to Michigan Compiled Laws (M.C.L.) § 791.255. It is conceivable, though in Jones' case not very likely, that if these major misconducts were to be reversed, his chances for parole would be improved. See M.C.L. §§ 800.33 and 800.34.

---

[1] Jones originally claimed that the papers confiscated from his prison cell by Kurth related to four prior major misconduct violations, but at trial Jones was only able to come up with three major misconduct convictions.

The 60-day time limit for filing an application for judicial review of the three major misconducts under M.C.L. § 791.255 has now expired. However, had Jones elected to obtain and use a footlocker in June 2007, he would have been able to timely file applications for judicial review in the Michigan state circuit court pursuant to M.C.L. § 791.255.

Jones has been found guilty on more than fifty such major misconduct violations during his imprisonment with MDOC, and he has never had any of them reversed or overturned on judicial review under M.C.L. § 791.255. Jones has not provided this Court with any reason to believe that MDOC erroneously issued the three major misconducts in question here and that they could have been reversed or overturned on judicial review under M.C.L. § 791.255.

III.

State prisoners have a fundamental right of access to the courts protected under the First and Fourteenth Amendments to the United States Constitution. *Lewis* v *Casey*, 518 U.S. 343, 346 (1996); *Bounds* v *Smith*, 430 U.S. 817, 821 (1977); *Pilgrim* v *Littlefield*, 92 F.3d 413, 416, (6th Cir. 1996). A prisoner's constitutional right of access to the courts extends only to direct criminal appeals from judgments of convictions, habeas corpus applications, and civil rights claims challenging the prisoner's conditions of confinement. *Lewis*, 518 U.S. at 355; *Thaddeus-X* v. *Blatter*, 175 F.3d, 378, 391 (6th Cir. 1999) (en banc).

The right of access to the courts is subject to reasonable limits and restrictions where justified by legitimate penological objectives, such as maintaining prison security and preventing fire or sanitation hazards. *Turner v. Safley*, 482 U.S. 78, 84-91 (1987); *Acord v. Brown*, 959 F.2d 233 (Table, text in 1992 WL 58975 (6th Cir. March 26, 1992)); *Hadix v. Johnson*, 842 F.2d 331 (Table, text in 1988 WL 24204 (6th Cir. March 17, 1988)); *Wagner v. Rees*, 780 F.2d 1024 (Table, text in

1985 WL 14025 (6th Cir. Nov. 8, 1985)) (State prisoner not denied access to courts when required to have no more than two cubic feet of legal materials in his prison cell and excess legal materials were held in storage); *Coleman v. Sweeney*, 2009 WL 3270006, * 3 (W.D. Mich. Oct. 8, 2009).

MDOC Policy Directives 04.03.120 and 4.07.112, and MDOC Operating Procedure 4.07.112 place reasonable limits and restrictions on Jones' right of access to the courts and his right to possess excess legal materials in his prison cell. These MDOC policies and procedures are justified by the legitimate penological objective of preventing fire and safety hazards in MDOC facilities.

In this case, it is not at all clear that the confiscated material is in fact legal material. All we have is Jones' unsubstantiated word on that. The documents in question have not been shown to this Court. Assuming, however, for the purposes of discussion that the items confiscated from Jones are law related material, defendant Kurth had every right to remove Jones' excess property from his prison cell and place it in storage in accordance with established MDOC regulations in furtherance of the reasonable goal of preventing fire and sanitation hazards. For this reason alone, Jones' claim fails and must be dismissed under 42 U.S.C. § 1983.

In any event, it is manifest that Jones had not met his burden of proving that he suffered any actual litigation related injury or legal prejudice as a result of the defendants' conduct. A prisoner claiming under 42 U.S.C. § 1983 that he has been deprived of his constitutional right of access to the courts must prove that he suffered an actual litigation related injury or legal prejudice to a non-frivolous claim because of the defendants' actions. An actual injury does not occur without a showing by the plaintiff prisoner that a non-frivolous claim has been lost or rejected by a court, or that the prisoner's presentation of such a claim is being prevented by the defendant's actions. *Lewis*, 518 U.S. at 349-51, 354-56; *Clark v. Corrections Corp. of America*, 113 F. Appx. 65, 68 (6th Cir.

2004); *Thomas v. Rochell*, 47 Fed. Appx. 315, 317 (6th Cir. 2002); *Root v. Towers*, 238 F.3d 423 (Table, text in 2000 WL 18888734, *1 (6th Cir. Dec. 21, 2000)); *Berryman v. Overton*, 19 F.3d 18 (Table, text in 1994 WL 69579, *1 (6th Cir. March 7, 1994)); *Pilgrim*, 92 F.3d at 416; *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *Coleman*, 2009 WL 3270006, at * 3.

A prisoner cannot show actual injury when he still has access to his legal materials by request. *Kensu*, 87 F.3d at 175. A prisoner also cannot show actual injury when he could have received access to his legal materials by complying with the MDOC limits on the amount of personal property the prisoner is allowed to keep in his cell, e.g. where prisoner had the opportunity to select the particular items of legal material he wanted to keep with him in his cell, or when prisoner he had the opportunity to purchase a footlocker to store excess legal materials in his cell. *Carlton v. Fassbender*, 1993 WL 241459, * 2 (6th Cir. July 1, 1993).

This Court finds that plaintiff Jones has not met his burden of proving that he suffered an actual litigation related injury or legal prejudice for three reasons. First, Jones he has not proved by a preponderance of the evidence that any of his claims or contentions regarding the three major misconduct violations are non-frivolous. Based on the evidence presented to this Court at trial, there is absolutely no reason to believe that Jones would have been successful in any endeavor to have the three major misconduct violations reversed on judicial review in Michigan state circuit court pursuant to M.C.L. § 791.255.

Second, Jones had the opportunity to retain in his cell what he claimed were necessary legal documents and materials. Jones made a deliberate choice to decline to retain them. Consequently, he cannot prove that he has suffered an actual injury. *See Carlton*, 1993 WL 241459, for a case very similar to the facts and circumstances presented here. Jones obviously was not interested in pursuing

7

judicial review of the three major misconduct violations in Michigan state circuit court pursuant to M.C.L. § 791.255. Rather, Jones was only interested in ginning up what he thought would be a successful, or at the very least harassing, lawsuit against these defendants. Jones could have retained possession of his personal property and alleged legal materials in his prison cell if he had really desired to do so. Jones himself could have prevented any alleged injury resulting from the confiscation of his documents and books. Thus, Jones suffered no actual injury as a result of the defendants' conduct.

Finally, if Jones had wanted to timely file petitions or applications for judicial review in the Michigan state circuit court under M.C.L. § 791.255 regarding the three prisoner major misconduct violations, he could have readily obtained whatever relevant documents and records he needed from defendant Bonevelle. Bonevelle keeps all prisoner misconduct documents for a period of three years. Jones failed and neglected to do this. A prisoner cannot prove actual injury on a right-of-access-to-courts claim when he fails to show how he is unable to replicate the confiscated legal documents. *Vandiver v. Niemi*, 42 F.3d 1389 (Table, text in 1994 WL 677685, * 1 (6th Cir. Dec. 2, 1994)); *Theriot v. Malhowski*, 2009 WL 2447974, * 2 (W.D. Mich. Aug. 7, 2009); *Jones v. Bonevelle*, 2009 WL 2134923, ** 5-6 (W.D. Mich. July 15, 2009).

Accordingly, the Court concludes that Jones' claims are without merit and will be dismissed with prejudice. Judgment will be entered for the defendants.

SO ORDERED.

Dated: 1/6/2010

                         */s/ R. Allan Edgar*
                         R. ALLAN EDGAR
                         UNITED STATES DISTRICT JUDGE